UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~~

WLODZIMIERZ J. DZWONCZYK,
         Plaintiff,
  v.            5:10-CV-300

GLENN T. SUDDABY; NEAL P. McCURN;
NORMAN A. MORDUE; LAWRENCE K.
BAERMAN; JANE& JOHN DOES; and
GORDON DOE,
         Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~

APPEARANCES:        OF COUNSEL:

WLODZIMIERZ J. DZWONCZYK
Plaintiff, *pro se*

DAVID N. HURD
United States District Judge

## DECISION and ORDER

Plaintiff, Wlodzimierz J. Dzwonczyk, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in addition to various federal statutes. (Compl. ¶ 4) (Dkt. No. 1). Plaintiff has filed a motion to proceed *in forma pauperis* (IFP). (Dkt. No. 2). On April 1, 2010, plaintiff filed a "motion to stay" in case his action "survives a *sua sponte* dismissal." (Dkt. No. 3). On April 5, 2010, plaintiff filed a notice consenting to a Magistrate Judge's jurisdiction. (Dkt. No. 4). Finally, on April 7, 2010, plaintiff filed a letter-motion requesting that the judges be dismissed as defendants. (Dkt. No. 5). Plaintiff seeks declaratory, injunctive, and monetary relief. (Compl. ¶¶ 5-6 & p.6).

## I. Background

In plaintiff's statement of facts, he recites that he previously filed "two federal Cases" in this district that he withdrew himself, allowing them to be dismissed "with prejudice." (Compl. ¶ 7) (citing 5:07-CV-1239[1] (GTS/DEP) and 5:08-CV-557 (NPM/DEP)). On November 13, 2008, Chief Judge Norman A. Mordue issued an order in both of these actions, prohibiting plaintiff from contacting employees of the Clerk's Office for the Northern District of New York or the chambers of any judicial officer in the Northern District by telephone or in person.[2] (Dkt. No. 82 in 5:07-CV-1239; Dkt. No. 69 in 5:08-CV-557). Chief Judge Mordue further ordered that any communication with the court by plaintiff be in writing, and plaintiff would not be permitted to enter any buildings "used by" the Court or by the District Court Clerk's Office, without an escort by a Court Security Officer or United States Marshal. *Id.* at 2.

On March 26, 2009, Magistrate Judge Peebles issued an order in 5:08-CV-557, statistically closing the action because plaintiff's financial and other difficulties were making it impossible for him to communicate with the court or for the court to communicate with him in writing. (Dkt. No. 89). The same order was issued in 5:07-CV-1239. (Dkt. No. 86). Plaintiff subsequently moved to Poland for a brief time. (Dkt. No. 88 in 5:07-CV-1239; Dkt. No. 94 in 5:08-CV-557). On July 31, 2009, Magistrate Judge Peebles issued an order in 5:07-CV-557, based upon a letter he had received from plaintiff dated July 17, 2009 and addressed to Chief Judge Mordue, Magistrate Judge

---

[1] The complaint contains a typographical error. Plaintiff cites 5:07-CV-1329, however, his case is actually 5:07-CV-1239, and the court will refer to the action with its proper civil action number.

[2] Magistrate Judge David E. Peebles issued a similar order earlier in both actions. (Dkt. No. 28 in 5:07-CV-1239; and Dkt. No. 43 in 5:08-CV-557).

Peebles, and Senior Judge McCurn. *Dzwonczyk v. Syr. City Police Dep't*, No. 5:08-CV-557. (Dkt. Nos. 98-99 in 5:08-CV-557). Plaintiff's letter was labeled a "complaint," in which he requested *inter alia*, that "the court" rescind Judge Mordue's order, and that the case be transferred to Binghamton.[3] (Dkt. No. 99). Plaintiff also made a number of "complaints" about the Clerk of the Court and his employees in the Clerk's Office in Syracuse as well as members of the United States Marshal's Service. The letter specifically stated that plaintiff was not complaining about the judges, only the Clerk's Office and Marshal's Service employees. *Id.*

In his July 31, 2009 order, Judge Peebles reminded plaintiff that his case was "closed" until plaintiff requested that it be reopened, and he certified to the court that he was able to fully participate in the proceedings.[4] (Dkt. No. 98). Judge Peebles stated that no action would be taken by the court relative to plaintiff's letter until the case was reopened. *Id*. Judge Peebles further advised plaintiff that

> if it was his intention to commence a separate suit asserting legal claims against Clerk [sic] Court Lawrence Baerman and/or other members of his staff, then in that event he must submit a formal written complaint in compliance with the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, accompanied by either the statutory filing fee . . . or an application to proceed *in forma pauperis*, naming the individual staff members against whom his complaint is made and setting forth the legal basis upon which his claims are asserted.

*Id.* at 3.

---

[3] Plaintiff apparently believed that Magistrate Judge Peebles' office was in Binghamton, and that such a "transfer" would mean that plaintiff could appear in Binghamton and would not have to deal with the employees of the Syracuse Courthouse and Federal Building.

[4] The court notes that plaintiff's letter listed a return address for plaintiff in Poland. (Dkt. No. 99 in 9:08-CV-557).

- 3 -

On September 10, 2009, plaintiff sent a letter to Magistrate Judge Peebles in 5:07-CV-1239 as well as in 5:08-CV-557, requesting various forms of relief, including dismissal of the two actions "with prejudice," requesting dismissal of various Syracuse City Court prosecutions of plaintiff, and requesting that based on his agreement to dismiss the two federal actions, plaintiff be again allowed "free access to all the offices of the US Federal Courthouse . . . ." (Dkt. No. 102 in 5:07-CV-1239; Dkt. No. 107 in 5:08-CV-557).[5] On September 23, 2009, plaintiff's September 10, 2009, letter to Magistrate Judge Peebles was addressed by Senior Judge Neal P. McCurn in 5:08-CV-557. (Dkt. No. 109). On September 28, 2009, plaintiff's September 10, letter to Magistrate Judge Peebles was addressed by District Judge Glenn T. Suddaby in 5:07-CV-1239. (Dkt. No. 104).

Both Judges Suddaby and McCurn granted plaintiff's motion to dismiss his cases with prejudice, but declined to vacate or alter Chief Judge Mordue's order prohibiting plaintiff from entering the Courthouse without an escort or from personally contacting Court employees. *Id.*  Plaintiff originally filed this action against Chief Judge Mordue; Judges Suddaby and McCurn; Clerk of the Court, Lawrence Baerman; and John and Jane Doe Court employees, and a "Gordon Doe," who "has a place of business at [sic] United States Marshal [sic] Service." (Compl. at 1) (Dkt. No. 1 in 5:10-CV-300).

## II. **Facts**

The current complaint basically takes the facts that plaintiff stated in his July 17, 2009, letter to Judges Mordue, Peebles, and McCurn and puts them into a "Verified Complaint" form. (Dkt. No. 1).  Plaintiff states a variety of bases for this court's jurisdiction.

---

[5] The plaintiff's September 10, 2009, letter was sent directly to Magistrate Judge Peebles, and was filed in both federal actions on September 14, 2009.

(Dkt. No. 1 at 2). He states that he is bringing this action under the United States Constitution, *Bivens*, 28 U.S.C. §§ 1331, 1343, 2201, and 42 U.S.C. § 1983 and 1985. In his statement of facts, plaintiff discusses Judge Mordue's order, and states that Judge Mordue based his order upon "reports from clerk's office employees," sued as "JOHN/JANE DOES," who allegedly told Judge Mordue that plaintiff was calling them using profanity and threats of injury. (Dkt. No. 1 at 2-3, ¶ 8). Plaintiff claims that these reports were completely false and made in order to defame plaintiff, injuring his "integrity, high morals, [and] virtue." *Id.* ¶¶ 9-10. Plaintiff claims that these defendants were trying to portray him to Judge Mordue as a "crazy person." *Id.* ¶ 10.

Plaintiff alleges that these defendants conspired to defame plaintiff, in order to unlawfully restrict his "access to the justice system," and to deny him his rights under the First Amendment of the United States Constitution. *Id.* ¶ 11. Plaintiff states that the order restricting him from entering the Courthouse without an escort and other restrictions imposed by Judge Mordue's order caused plaintiff "severe emotional distress." *Id.* Plaintiff also alleges that the John and Jane Doe Clerk's Office employees failed to send plaintiff Judge Peebles' July 31, 2009, order which, according to plaintiff, was issued to inform plaintiff that instead of filing a letter complaining about the conduct of the Clerks, he could file a separate lawsuit against Clerk of the Court Lawrence Baerman as well as against other Clerk's Office employees.[6] *Id.* ¶ 13. Plaintiff claims that he learned about Judge Peebles' order on "google." *Id.*

---

[6] It is assumed that plaintiff believes that the Clerk's Office employees were attempting to keep Magistrate Peebles' order away from plaintiff so that he would be unaware that he could file a separate lawsuit against the Clerk's Office defendants.

Although plaintiff now no longer wishes to name the judges as defendants, he states that Judge Mordue failed to properly consider the Clerk's Office employees' statements and "rushed to issue" his order without giving plaintiff the opportunity to "explain or defend himself" from the allegations. *Id.* ¶ 15. Plaintiff then alleges that although Judge Mordue ordered personal service of his November 2008 order, plaintiff was "never served at home." *Id.* ¶ 17. Plaintiff states that he learned about the order on PACER, and brought it to defendant Baerman so that Judge Mordue could "check its authenticity." *Id.* ¶ 18. Plaintiff seems to allege that when he brought this document to defendant Baerman, the defendant "added about 100 documents," placed everything in a yellow envelope, and sealed it. *Id.* Plaintiff somehow alleges that this action by defendant Baerman constituted falsification of court records that was witnessed by Marshal defendant Gordon Doe. *Id.* ¶ 19.

Plaintiff states that Judges Suddaby and McCurn conspired to extend Judge Mordue's order unnecessarily, even though plaintiff withdrew both of his civil actions. *Id.* ¶ 20. The complaint states that the judges acted in "a hostile and prejudicial manner towards Plaintiff," and that their refusal to change Judge Mordue's ruling, essentially leaving the order in effect permanently, "reflects an improper motive and abuse of judicial authority because plaintiff does not need to be escorted "anywhere by anyone." Plaintiff's latest submission states that he has determined that although there is a "causal connection" between the "defamatory" statements made to Judge Mordue and all of the Judges' orders, Judge Mordue "could have construed" the Clerk's Office defendants' statements as true, despite his failure to provide plaintiff an opportunity to defendant himself. (Dkt. No. 5 at 1).

Plaintiff also states that "including these Judges as Defendants in this action could be construed by the court as frivolous." *Id.* Thus, in his latest submission, plaintiff withdraws the complaint as against the judges,[7] and the court will thus consider this case only as against the Clerk's Office and Marshal's Service defendants. The remaining claims in this complaint are against defendants Baerman, and the "Doe" defendants. Plaintiff seeks substantial damages as against these defendants. *Id.* at p.6. Plaintiff also wishes the court to issue an injunction prohibiting defendants from making false or defamatory statements about the plaintiff and wishes an injunction requiring Clerk's Office employees to treat plaintiff in a proper, civilized manner.[8]

## III. IFP Application

Plaintiff has filed this action, requesting that he be granted IFP status pursuant to 28 U.S.C. § 1915. (Dkt. No. 2). The statute governing IFP actions provides that the court may authorize the commencement of a civil action without the payment of fees when the plaintiff files an affidavit that includes a statement that he is unable to pay the required fee or give security therefor. 28 U.S.C. § 1915(a)(1). The same section, however, states that this determination is "subject to subsection (b)." *Id.* Subsection (b) provides that notwithstanding any filing fee or portion of the fee that may have been paid, the court ***shall dismiss*** the case ***at any time*** if the court determines that the allegation of poverty is

---

[7] Although in his "motion," plaintiff asks for an order pursuant to FED. R. CIV. P. 21, he need not do so because his complaint has not been served on any defendants. Plaintiff is free to simply withdraw the action as against the named judges.

[8] Although the complaint also requests that the judges' orders restricting plaintiff's access to the courthouse and its employees be rescinded, plaintiff's withdrawal of the complaint against the judges effectively prevents the court from issuing any such order in this case. The remaining defendants have no authority to change any judge's order.

untrue, or the action is (I) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(I)-(iii).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). In determining whether an action is frivolous, the court must determine whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). With these standards in mind, the court will proceed to review plaintiff's complaint.

## IV. *Bivens*

Since plaintiff has withdrawn his allegations against the judges, his remaining claims are directed toward Clerk of the Court, Lawrence Baerman, together with some unidentified court employees and one unidentified Marshal's Service employee. The method for bringing constitutional claims against federal officials is pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[9]

---

[9] Plaintiff also cites 42 U.S.C. § 1983, however this statute applies to defendants who are acting under color of ***state*** law. None of the defendants in this action are state employees. *See e.g., Dalaia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) (construing *pro se* section 1983 claims under *Bivens*).

- 8 -

*Bivens* established a cause of action for monetary damages resulting from the violation of a constitutional right by federal agents or employees, acting under color of federal law. *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009) (discussing history of *Bivens* actions).

### A. **Defamation**

Plaintiff claims that defendants John and Jane Does from the Clerk's Office gave false information to Judge Mordue, portraying plaintiff as a "crazy man," resulting in Judge Mordue's order restricting plaintiff from coming into the Federal Courthouse without an escort and requiring plaintiff to only communicate with Courthouse staff in writing. The Supreme Court has held that "[d]efamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Under limited circumstances, federal constitutional relief may be available if plaintiff can show a "'stigmatizing statement plus a deprivation of a tangible interest.'" *Burgos Vega v. Lantz*, 596 F.3d 77, 2010 U.S. App. LEXIS 4261, *8 (2d Cir. March 2, 2010) (citing *Siegert, supra*) (*Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)).

Thus, plaintiff cannot bring a suit for a violation of his constitutional rights based on a defamation claim alone. Plaintiff seems to allege that the defendants "conspired"[10] with

---

[10] Plaintiff also brings this action under 28 U.S.C. § 1985 for conspiracy to violate his constitutional rights. Unlike section 1983, section 1985 does not contain a "state action" requirement. *See Vandermark v. City of New York*, 615 F. Supp. 2d 196, 205 (S.D.N.Y. 2009). However, the "'rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere,' namely within a constitutional guarantee." *Id.* Defendants in this case are all federal employees, and thus, plaintiff may base his constitutional claims, even those based on an alleged "conspiracy" on *Bivens* alone.

In any event, to establish a claim under section 1985(3), plaintiff must establish a racial or class-based conspiracy to deprive a person or class of persons of equal protection of the laws. *Id.* Plaintiff must also establish an act done in furtherance of the conspiracy, and he must establish that he was injured in his person or property as a result. *Id.* Plaintiff in this case has not alleged a racial or class-based conspiracy, only a vague conspiracy to portray him as a "crazy man." In addition, conclusory,

(continued...)

each other to defame plaintiff with the intent of restricting plaintiff's access to the justice system.  Plaintiff implies that the "defamation" resulted in Judge Mordue's order, which then resulted in plaintiff's restricted access to the Courthouse, ultimately violating his constitutional rights.  However, the John and Jane Doe[11] defendants' only actions were to complain about the plaintiff's behavior.  These defendants did not make the decision to restrict plaintiff's access to the Courthouse.  That decision initially belonged to Judge Mordue alone.[12]  The other judges declined to change that order.  Even assuming that the information conveyed to Judge Mordue was false, the only claim against the Clerk's Office defendants would be the alleged "defamation," which is not in itself a constitutional claim.  Therefore, plaintiff's claims based upon defamation will be dismissed.

### B. Tampering with Court Documents

Plaintiff alleges that defendants John and Jane Does failed to send Judge Peebles' order to plaintiff, wherein he tells plaintiff that he may file a separate lawsuit against Lawrence Baerman and the Clerk's Office Employees.[13] (Compl. ¶ 13).  It appears

---

(...continued)
vague, or general allegations of conspiracy are insufficient to state a claim under section 1985. *White v. St. Joseph's Hospital*, No. 08-2876, 2010 U.S. App. LEXIS 5070, *4 (2d Cir. March 10, 2010) (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir. 2003)).  In any event, section 1985 would not be a proper basis for his claims.

[11]  If the complaint had been allowed to proceed, plaintiff would have had to identify these defendants.  However, this issue need not be reached because the action is being dismissed *sua sponte*.

[12]  Plaintiff has withdrawn his claims against all the judges, thus, the court need not reach the issue of judicial immunity. *See Huminski v. Corsones*, 396 F.3d 53, 77-78 (2d Cir. 2004) (judges act in their judicial capacity and are entitled to absolute immunity when they restrict access to the courthouse based upon perceived security issues).

[13]  It is unclear whether plaintiff intends to state some separate claim based upon the alleged failure of the Clerk's Office employees to send plaintiff a copy of Judge Peebles' order.  There is no constitutional right asserted by plaintiff in conjunction with this statement.  In any event, a review of the docket sheet shows that a copy of Judge Peebles' order was mailed to plaintiff in Poland at the address
(continued...)

that the only claims made against defendants Baerman and Gordon Doe are that somehow defendant Baerman added documents to a submission given to him by the plaintiff while defendant Gordon Doe watched. (Compl. ¶ 18).

Plaintiff claims that when he found out about Judge Mordue's November 2008 order, he brought a copy to defendant Baerman, but had to be escorted to the Clerk's Office by a US Marshal. *Id.* Apparently, plaintiff brought a copy of the order to the Courthouse because he wanted Judge Mordue to "check its authenticity." *Id.* Plaintiff claims that "Defendant Baerman, in front of Plaintiff added about 100 documents, which he placed in a big yellow envelope and sealed it. Gordon Doe witnessed that fact, and did not restrain Defendant Baerman from falsifying court records in 5:07CV1239 and 5:08CV557 respectively." *Id.* The complaint then states that defendants Gordon Doe and Baerman "conspired in order to falsify Plaintiff's court records, and unable [sic] the Chief Judge to verify the authority of the ORDER. Chief Judge struck Plaintiff's falsified submission from the record. Thus, the ORDER based upon absolutely false, defamatory statements has remained in full force." *Id.* ¶ 19.

As plaintiff is aware, with minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Glavin v. Restaino*, 210 Fed. Appx. 122, 123-24 (2d Cir. 2006) (citing *inter alia Stump v. Sparkman*, 435 U.S.

---

(...continued)
that plaintiff provided. (Dkt. Nos. 94, 98-99 in 5:08-CV-557). Judge Peebles' order was issued on July 31, 2009, and plaintiff did not advise the court to stop sending correspondence to Poland until August 20, 2009. (Dkt. No. 103). In the letter that plaintiff filed on August 20, 2009, he asked the court to stop sending correspondence to Poland because he was having trouble receiving it. *Id.* It is likely that if plaintiff did not receive Judge Peebles' July 31, 2009 order, it was because of the difficulty he was having receiving mail in Poland, and ***not*** because Clerk's Office employees were trying to prevent him from getting the order.

349, 356-57 (1978)). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Absolute judicial immunity has been extended to persons other than a judge who performs functions that are "'closely associated with the judicial process.'" *McKnight v. Middleton*, No. 08-CV-3896, 2010 U.S. Dist. LEXIS 30093, *40 (E.D.N.Y. March 29, 2010) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). The Clerk of the Court is one of those individuals to whom judicial immunity has been extended. *Id.* However, absolute immunity covers only some functions performed by the Clerk of the Court, and where the Clerk performs "'ministerial, non judicial duties,' or 'purely administrative tasks,' only qualified, good faith immunity attaches." *Id.* (citing *inter alia Isasi v. Heinemann*, No. 08-CV-5284, 2009 U.S. Dist. LEXIS 4392, 2009 WL 159601, at *2 (E.D.N.Y. Jan. 21, 2009)).

Clerks performing administrative functions will still be afforded absolute immunity if the functions they are performing are "judicial in nature" and "an integral part of the judicial process." *Id.* (citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). In order to make this determination, the Second Circuit follows a "functional approach" and affords absolute immunity when the Clerk is performing a discretionary act, or performing a duty that inherently relates to resolving a dispute. *See, e.g., Rodriguez*, 116 F.3d at 67; *Reisner v. Stoller*, 51 F. Supp. 2d 430, 444 (S.D.N.Y. 1999) (citing *inter alia Kane v. Yung Won Han*, 550 F. Supp. 120, 123 (E.D.N.Y. 1982)). A court clerk's control of the court docket is part of the court's function of resolving disputes. *Rodriguez*, 116 F.3d at 66-67 (citations omitted).

In this case, plaintiff somehow believes that defendant Baerman's conduct constitutes "falsifying" court records. (Compl. ¶¶ 18-19). It is unclear how plaintiff claims that defendant Baerman "falsified" records. Essentially, plaintiff alleges that defendant Baerman placed a document together with other documents and filed them. A review of the filing in question shows that on December 1, 2008, Judge Mordue struck a "letter motion" filed by plaintiff "requesting Court review of his two cases for document authenticity." (Dkt. No. 83). The letter-motion was filed together with approximately 169 pages of other documents that were labeled "Exhibits-Part 1" and "Exhibits Part 2." *Id.*

Plaintiff seems to claim that because defendant Baerman filed plaintiff's request for "authenticity" with all the other documents, it caused Judge Mordue to strike the submission, therefore plaintiff did not obtain the desired relief from the court. A review of the letter-motion submitted by plaintiff shows that in addition to asking Judge Mordue to review the records in both cases, the letter also asks that the Syracuse Police Department give plaintiff back his cars which were impounded, and plaintiff alleges that he was wrongfully arrested two to three times. (Dkt. No. 83). Even assuming that defendant Baerman filed the documents improperly,[14] filing and docketing legal documents are actions constituting "an integral part of the judicial process." *See Pikulin v. Gonzales*, No. 07-CV-412, 2007 U.S. Dist. LEXIS 25551, *6 (E.D.N.Y. April 5, 2007). Thus, plaintiff's claims against defendant Baerman or members of his staff relating to the way documents

---

[14] There is no indication that any documents were "falsified." The letter is clearly in plaintiff's handwriting, and all the other documents pertain to the plaintiff. It is unclear how defendant Baerman would have obtained these documents if plaintiff had not provided them. In fact, given the confusing nature of plaintiff's submissions, it is understandable that defendant Baerman would file all of plaintiff's documents, lest he later be accused of omitting something.

were filed with the court or how orders were sent to plaintiff may be dismissed based upon absolute immunity.[15]

The only thing that plaintiff alleges against defendant Gordon Doe is that he "witnessed" defendant Baerman's actions, likely because plaintiff was under Judge Mordue's order, requiring him to be escorted when he came into the Syracuse Federal Building. Although plaintiff claims that defendant Gordon Doe[16] "conspired" with defendant Baerman to "falsify" court records, as stated above, plaintiff has absolutely no basis for this claim. By statute, the Marshal's Service and the Department of Homeland Security have the responsibility to provide security services in United States Courthouses. 28 U.S.C. § 566(a) (Marshal's Service); 40 U.S.C. § 1315 (Homeland Security). The courtroom and courthouse premises are subject to the court's control. *See, e.g., United States v. Smith*, 426 F.3d 567, 575-76 (2d Cir. 2005), *cert. denied*, *Smith v. United States*, 546 U.S. 1204 (2006).

Defendant Gordon Doe only "witnessed" whatever conduct plaintiff alleges by defendant Baerman because defendant Doe was following Judge Mordue's order to escort plaintiff while he was visiting the Federal Court. Plaintiff in this case does not plausibly

---

[15] Even assuming that the clerks were only entitled to qualified immunity, plaintiff's claim could not succeed. The doctrine of qualified immunity protects government officials performing discretionary functions in the course of their employment. *Delisser v. Goord*, 9:02-CV-073, 2003 WL 133271 at *2, 2003 U.S. Dist. LEXIS 488 (N.D.N.Y. Jan. 15, 2003). It shields them from liability for money damages where "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In this case it is clear from the docket that at the time Judge Peebles issued his order, plaintiff was still in Poland. It is completely understandable that the clerk would send Judge Peebles' order to the address that was given to the court by the plaintiff himself. The fact that plaintiff may have been having difficulty receiving his mail in Poland was not known to the court until a month after Judge Peebles issued his order. The clerks could not have known they were violating plaintiff's constitutional rights.

[16] It is unclear who Gordon Doe is, however, whether he is a Deputy United States Marshal or a Court Security Officer (CSO), is irrelevant to this court's decision.

allege, nor can he allege that the Marshal or CSO had any authority over the filing of plaintiff's documents, nor does plaintiff plausibly allege that the Marshal or CSO engaged in any "conspiracy" to improperly file plaintiff's documents. Such conclusory allegations of "conspiracy" may be dismissed. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (sections 1983 and 1985).

THEREFORE, it is

ORDERED, that

1. Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is GRANTED;

2. Plaintiff's motion for a stay (Dkt. No. 3) is DENIED;

3. Plaintiff's motion to dismiss defendant Judges Glenn T. Suddaby, Neal P. McCurn, and Norman A. Mordue (Dkt. No. 5) is GRANTED

4. The complaint is DISMISSED IN ITS ENTIRETY as against Judge Glenn T. Suddaby, Senior Judge Neal P. Mccurn, and Chief Judge Norman A. Mordue;

5. The remainder of this action is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(I)-(iii);

6. The Clerk of the Court is directed to serve a copy of this Order on plaintiff in accordance with the Local Rules; and

7. The Clerk of the Court is directed to file judgment accordingly and close the file.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

_____
United States District Judge

Dated: April 28, 2010
       Utica, New York.